1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WYKANUSH VENTURES LLC, | CASE NO. 3:21-cv-05710-DGE-MLP |
| Plaintiffs, | |
| v. | ORDER PROVISIONALLY GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 84) AGAINST KARSTAN WALKER PENDING EVIDENTIARY HEARING ON DAMAGES |
| KARSTAN WALKER et al., | |
| Defendants. | |

## I    INTRODUCTION

This matter comes before the Court on Plaintiffs Wykanush Ventures, LLC and TCAIXP, LLC's motion for default judgment.  (Dkt. No. 84.)  Plaintiffs seek default judgment against Defendants Karstan Walker and Kristopher Walker.  (*Id.*)  For the reasons that follow, Plaintiffs' motion is provisionally GRANTED against Defendant Karstan Walker pending an evidentiary hearing on damages and DENIED against Defendant Kristopher Walker.

1

## II     BACKGROUND

2

### A.  Factual Background

3      In 2019, Plaintiffs contracted Defendant Karstan Walker (Walker) as a bookkeeper.

4  (Dkt. No. 75 at 3.)  Plaintiff Wykanush, LLC (Wykanush) operates a commercial cannabis grow

5  facility.  (*Id.* at 1.)  Plaintiff TCAIXP, LLC ("Eden") operates two retail marijuana businesses.

6  (*Id.* at 2.)

7      Plaintiffs hired Walker to provide bookkeeping and other financial management services.

8  (*Id.* at 3.)  "Walker was always an independent contractor and was therefore never paid as a W-2

9  employee."  (*Id.*)  Walker "represented that she was an experienced, reliable, and qualified

10 bookkeeper familiar with accounting principles, managing accounts and methodology and was

11 proficient with QuickBooks and other accounting software."  (*Id.*)  Per the agreement between

12 the parties, Walker was responsible for maintaining Plaintiffs' financial records, receiving

13 revenue, depositing checks and cash, paying bills, working with creditors, and providing reports

14 and accounts to Plaintiffs.  (*Id.*)

15     In February 2020, the property manager informed Plaintiffs their rent was several months

16 in arrears and threatened eviction.  (*Id.* at 4.)  Walker asserted the past due amount was a

17 misunderstanding and that she would address the concerns with the property manager.  (*Id.*)  A

18 few months later, Plaintiffs learned they fell further behind on their rent and that they also had

19 outstanding public utility bills.  (*Id.*)  Plaintiffs also learned Walker gave the property manager

20 checks that were returned for insufficient funds.  (*Id.*)  Plaintiffs confronted Walker who assured

21 them she made the payments and the confusion lay with the property manager and utility

22 company.  (*Id.*)  To support her claim, Walker falsified reports on QuickBooks as well as other

23

24

1    documents.  (*Id.*)  Walker quit after the Plaintiffs confronted her about the falsified documents.

2    (*Id.* at 5.)

3          Plaintiffs allege Wykanush sustained damages amounting to $259,838.61, comprised of:

4    (1) $86,885.87 in unauthorized cash withdrawals; (2) $34,500.00 in unauthorized withdrawals

5    from Wykanush's bank account; (3) $2,500.00 in the unauthorized use of Wykanush's debit

6    card; (4) $131,953.74 in unauthorized retention of cash withdrawals; and (5) $3,999 due to

7    returned check fees and overdraft fees.  (Dkt. No. 85 at 5–7.)  Additionally, Plaintiffs request

8    prejudgment interest accumulated from September 24, 2020, to October 31, 2024, in the amount

9    of $127,968.74, and post judgment interest from November 1, 2024, until judgment is paid, at

10    the statutory rate of 12% per annum pursuant to 28 U.S.C. § 1961(a), Washington Revised Code

11    § 4.56.110(6), and Washington Revised Code § 19.52.020.  (*Id.* at 9.)

12          Plaintiffs allege Eden sustained damages amounting to $32,935.00, comprised of: (1)

13    $10,000.00 in unauthorized withdrawal from Eden's safe; (2) $14,160.00 in unauthorized

14    retention of cash; and (3) $8,775.00 in the unauthorized use of Eden's debit card.  (*Id.* at 7–8.)

15    Additionally, Plaintiffs request prejudgment interest from September 24, 2020, through October

16    31, 2024, in the amount of $16,220.26, and post judgment interest from November 1, 2024, until

17    judgment is paid, at the statutory rate of 12% per annum pursuant to 28 U.S.C. § 1961(a),

18    Washington Revised Code § 4.56.110(6), and Washington Revised Code § 19.52.020.  (*Id.* at 9.)

19    **B.  Procedural History**

20          On September 24, 2021, Plaintiffs initiated this action against Walker and her spouse,

21    Kristopher Walker, and Ronald Yauchzee.  (Dkt. No. 1.)  On February 22, 2023, this Court

22    dismissed all claims against Ronald Youchzee without prejudice.  (Dkt. No. 51.)  On August 15,

23    2023, Plaintiffs filed their first amended complaint.  (Dkt. No. 66.)  On March 15, 2024,

24

1   Plaintiffs filed their second amended complaint.  (Dkt. No. 75.)  The operative complaint

2   contains five claims: (1) conversion, (2) fraudulent misrepresentation, (3) breach of contract, (4)

3   breach of fiduciary duty, and (5) unjust enrichment.  (Dkt. No 75.)  Plaintiffs assert all claims

4   against Walker, and claims one, two, and five against Kristopher Walker.  (*Id.*)

5       A default order against Walker and Kristopher Walker was entered on May 29, 2024.

6   (Dkt. No. 79.)  Currently pending is Plaintiffs' motion for default judgment against Walker and

7   Kristopher Walker.  (Dkt. No. 84.)

8                               **III      DISCUSSION**

9       **A.  Jurisdiction and Venue**

10      As a preliminary step, the Court must determine whether it has both subject matter and

11  personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When

12  entry of judgment is sought against a party who has failed to plead or otherwise defend, a district

13  court has an affirmative duty to look into its jurisdiction over both the subject matter and the

14  parties.").

15      The Court possesses subject matter jurisdiction in this matter under 28 U.S.C. § 1332.

16  Wykanush is an Oregon limited liability company with its principal place of business in

17  Multnomah County, Oregon.  (Dkt. No. 75 at 1.)  Wykanush's members are Lazlo Bagi, Kyle

18  Daniel, Bola Ibidunni, and Liliana Kozlowski.  (*Id.*)  Laszlo Bagi is domiciled in and is a citizen

19  of the State of Florida.  (*Id.*)  Kyle Daniel, Bola Ibidunni, and Liliana Kozlowski are domiciled

20  in and are citizens of the State of Colorado.  (*Id.*)

21      Eden is an Oregon limited liability company with its principal place of business in

22  Multnomah County, Oregon.  (*Id.* at 2.)  Eden has one member, Columbia Ventures, LLC, an

23

24

1    Oregon limited liability company.  (*Id.*)  Columbia Ventures, LLC has two members Laszlo Bagi

2    and Sophia Bagi.  She is domiciled in Colorado and is a citizen of the State of Colorado.

3        Walker resides in Clark County, Washington and is a citizen of the State of Washington.

4    (*Id.*)  Kristopher Walker resides in Clark County and is a citizen of the State of Washington.

5    (*Id.*)  Accordingly, the Court has subject matter jurisdiction under 28 U.S.C. § 1332 because

6    there is complete diversity among the parties and the amount in controversy exceeds $75,000.

7        The Court also has personal jurisdiction over Walker and Kristopher Walker because they

8    are citizens of the State of Washington.  (*Id.* at 2.)  Further, venue in the Western District of

9    Washington is proper because a substantial part of the events giving rise to the claims before this

10   Court occurred in this District.  (*Id.* at 3.)

11       In summary, jurisdiction and venue are proper.

12   **B.  Legal Standard**

13       The Court may enter a default judgment after a default has been entered by the Clerk of

14   the Court.  *See* Fed. R. Civ. Pro 55(b); LCR 55(a)-(b).  At the default judgment stage, the court

15   presumes all well-pleaded factual allegations are true, except those related to damages.

16   *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also* Fed. R. Civ. P.

17   55(b)(2)(B).  "The district court's decision whether to enter a default judgment is a discretionary

18   one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In addition to determining

19   whether Plaintiffs have adequately proven the amount of damages they seek, the Court considers

20   the following factors:

21       (1) the possibility of prejudice to the plaintiff[s], (2) the merits of plaintiff[s']
         substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
22       stake in the action; (5) the possibility of a dispute concerning material facts; (6)
         whether the default was due to excusable neglect, and (7) the strong policy
23       underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

24

1    *Eitel v. McCool*, 782 F.2d 1470, 1471–1472 (9th Cir. 1986).

2        Weighing the *Eitel* factors, the Court finds that entry of default judgment is warranted.

3            1.   *Eitel* Factor 1: Possibility of Prejudice to Plaintiff

4        The first *Eitel* factor, prejudice to the Plaintiff, weighs in favor of Plaintiff.  "On a motion

5    for default judgment, 'prejudice' exists where the plaintiff has no 'recourse for recovery' other

6    than default judgment."  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D.

7    Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499

8    (C.D. Cal.2003)).  Defendants' failure to answer this case hinders Plaintiffs' ability to recover,

9    and the Court finds that a default judgment is Plaintiffs' only means for recovery.  Accordingly,

10   the first *Eitel* factor favors default judgment.

11           2.   *Eitel* Factor 2 and 3: Merits of Plaintiff's Claims and Sufficiency of
                  Complaint

12       "In evaluating the second and third factors, the Court considers the merits of the

13   plaintiff's claims and whether the allegations in the complaint are sufficient to state a claim on

14   which the plaintiff may recover."  *Johnson v. Peter*, Case No. C21-1602-LK, 2023 WL 22021, at

15   *4 (W.D. Wash. Jan. 3, 2023).  These factors are frequently analyzed together.  *See Curtis*, 33 F.

16   Supp. 3d at 1211.  Plaintiffs' operative complaint contains five claims: conversion, fraudulent

17   misrepresentation, breach of contract, breach of fiduciary duty, and unjust enrichment.  (Dkt.

18   Nos. 74 at 11–14; 84 at 46.)

19               i.   Conversion

20       Plaintiffs allege "Walker knowingly took monies belonging to Plaintiffs for her use and

21   that of her family's, including Chris [sic] Walker, without the knowledge or consent of

22   Plaintiffs."  (Dkt. No. 84 at 4.)  As a result, Plaintiff claims Wykanush sustained damages

23

24

1  amounting to the principal amount of $259,838.61 and Eden sustained damages amounting to the

2  principal amount of $32,935.00.  (*Id.*)

3        Conversion is the unjustified, willful interference with a chattel which deprives a person

4  entitled to the property of possession.  *Potter v. Washington State Patrol*, 196 P.3d 691, 696

5  (Wash. 2008).  Money may be the subject of conversion if the defendant wrongfully received it.

6  *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214, 1223 (Wash. 2019).

7        As Wykanush's controller, Walker was solely responsible for maintaining the petty cash.

8  (Dkt. No. 85 at 4.)  As alleged by Plaintiffs, Walker withdrew petty cash without authorization

9  on nine occasions.  (*Id.* at 4–5.)  Further, on seven occasions Walker withdrew cash from

10  Wykanush's bank account without prior authorization.  (*Id.* at 5.)  Furthermore, Walker utilized

11  Wykanush's debit card to pay for her father's dental work.  (*Id.* at 6.)  Additionally, Plaintiffs

12  allege Walker was the sole individual receiving, recording, and depositing sales payments.  (*Id.*

13  at 7.)  Based on Plaintiffs analysis of the inventory sold, they claim Walker did not deposit all

14  sales payments.  (*Id.* at 6–7.)

15        As Eden's controller, Walker was responsible for paying the rent and taxes.  (*Id.* at 7.)

16  Plaintiffs allege Walker removed cash from their on-site safe purporting to utilize to pay the rent,

17  but instead retained the money and failed to pay the rent.  (*Id.* at 7–8.)  Further, prior to quitting,

18  Walker gathered Eden's cash deposit bags but did not deposit the money into Eden's bank

19  account.  (*Id.* at 8.)  Furthermore, Walker used Eden's debit card to make a payment towards her

20  student loans.  (*Id.*)

21        Walker deprived Plaintiffs of their property by dishonestly obtaining cash in a variety of

22  ways.  Accordingly, Plaintiffs have sufficiently alleged facts establishing Walker's liability for

23  conversion.

24

ORDER PROVISIONALLY GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 84) AGAINST
KARSTAN WALKER PENDING EVIDENTIARY HEARING ON DAMAGES - 7

1    Plaintiffs allege "Defendants schemed to steal Plaintiffs' funds" and used those funds to

2    pay for residential property, remodel their home, and live extravagantly.  (*Id.*)  Beyond this

3    conclusory allegation, Plaintiffs do not explain how Kristopher Walker willfully interfered with

4    their monies nor do they explain how he "wrongfully received" the cash.  Accordingly, the

5    Plaintiffs have not alleged sufficient facts to sustain a conversion claim against Kristopher

6    Walker.

7                    ii.    Fraud/misrepresentation

8    Plaintiffs allege Walker made numerous fraudulent misrepresentations regarding the

9    Plaintiffs' financial accounts, receipts, and payments, including forging or altering documents.

10   (Dkt. No. 84 at 5.)

11   In order to prove fraudulent misrepresentation, the Plaintiff must establish: (1)

12   representation of an existing fact; (2) materiality; (3) falsity; (4) speaker's knowledge of its

13   falsity; (5) speaker's intention that it shall be acted upon by plaintiff; (6) plaintiff's ignorance of

14   falsity; (7) reliance; (8) right to rely; and (9) damages.  *Hoffer v. State*, 755 P.2d 781, 787 (Wash.

15   1988.)

16   After Wykanush's property manager informed Laszlo Bagi it had not received payment

17   for five months of rent, Mr. Bagi confronted Walker.  (Dkt. No. 85 at 3.)  Walker asserted the

18   property manager was mistaken and gave Mr. Bagi a copy of a cashier's check, which Walker

19   asserted she gave to the property manager as payment for rent.  (*Id.*)  Later, Plaintiffs discovered

20   Walker forged the cashier check and never paid the rent.  (*Id.*)  The property manager once again

21   contacted Mr. Bagi to inform him they had not received payment for the past six months of rent.

22   (*Id.*)  Walker insisted she paid the rent and forwarded Mr. Bagi a forged email confirming the

23   wire transfer.  (*Id.*)  Further, Walker told Mr. Bagi she had resolved the misunderstanding with

24

ORDER PROVISIONALLY GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 84) AGAINST
KARSTAN WALKER PENDING EVIDENTIARY HEARING ON DAMAGES - 8

1    the property manager and gave him copies of checks she asserted were cashed to pay for the rent.

2    (*Id.* at 4.)  However, the checks were reversed due to insufficient funds and Walker did not pay

3    the rent.  (*Id.*)

4        Plaintiffs allege Walker's financial representations were both material and false, and she

5    knew they were false when she made them to Plaintiffs.  (Dkt. No. 84 at 5.)  Plaintiffs assert

6    Walker "intended that Plaintiffs would rely on the false statements and representation and trust

7    Walker to continue managing their financial accounts."  (*Id.*)  Furthermore, Plaintiffs identify

8    they "reasonably relied on those false and material statement[s] and representations and trust[ed]

9    Walker to continue managing their accounts."  (*Id.*)  Thus, Plaintiffs incurred damages by

10   continuing to employ Walker.  (*Id.*)

11       Plaintiffs sufficiently established their claim for fraudulent misrepresentation against

12   Walker.  However, Plaintiffs are not clear whether they are also pursuing their claim for

13   fraudulent misrepresentation against Kristopher Walker.  Regardless, Plaintiffs fail to brief the

14   Court on how Kristopher Walker was involved in any fraudulent misrepresentations.  As such, to

15   the extent Plaintiffs seek a claim for fraudulent misrepresentation against Kristopher Walker,

16   they have not met their burden.

17                    iii.    Breach of contract

18       Plaintiffs allege Walker breached their agreement by failing to fulfill her obligations

19   under the agreement.

20       In order to prevail on a breach of contract claim, the plaintiff must establish (1) the

21   contract imposes a duty, (2) the duty is breached, and (3) the breach proximately causes damage

22   to the claimant.  *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct.

23   App. 1995).  However, the Court must first determine whether a contract existed between the

24

1    Plaintiffs and Walker.  Contracts require offer, acceptance, and consideration.  *DePhillips v. Zolt*

2    *Const. Co., Inc.*, 959 P.2d 1104, 1109 (Wash. 1998).  "Acceptance is an expression of the

3    intention, by word, sign, or writing communicated . . . to the person making the offer."  *Plouse v.*

4    *Bud Clary of Yakima, Inc.*, 116 P.3d 1039, 1041 (Wash. Ct. App. 2005).

5         On May 5, 2019, Laszlo Bagi hired Walker to serve as the Plaintiffs' controller.  (Dkt.

6    No. 88 at 2.)  Plaintiffs agreed to pay Walker "$2,000 biweekly, for the total of $52,000 per

7    year[.]"  (*Id.*)  As controller, Walker's responsibilities included maintaining Plaintiffs' financial

8    records, receiving revenue, depositing checks and cash, paying bills, working with creditors, and

9    providing reports and accounts to Plaintiffs.  (Dkt. No. 88 at 3.)  Plaintiffs contracted with

10   Walker until she suddenly quit.  (Dkt. No. 75 at 5.)

11        Thus, Plaintiffs made an offer to Plaintiff to perform services and pay her $2,000

12   biweekly.  Walker accepted the offer and worked as Plaintiffs' controller until she quit.  Further,

13   Walker's bi-weekly salary and her performance as controller constitutes valid consideration.

14   Therefore, a valid contract existed between the parties.

15        As alleged by Plaintiffs, Walker's duties under the contract included "managing revenue

16   and expenditures, maintaining accounting records, and reporting to Plaintiffs' owners and

17   managers."  (Dkt. No. 84 at 5.)  Plaintiffs allege Walker breached her duties by "(1) taking

18   monies belonging to the Plaintiffs without authorization, (2) failing to properly account for

19   monies received and paid, (3) failing to timely pay Plaintiffs' vendors and creditors, (4) failing to

20   provide honest and accurate reports to the Plaintiffs, and (5) failing to properly maintain the

21   Plaintiffs' books."  (*Id.*)  Further, Plaintiffs allege that as a result of Walker's breach of duty,

22   Wykanush incurred damages amounting to $259,838.61 and Eden incurred damages to the

23   amount of $32,935.00.  (*Id.*)

24

1    Accordingly, Plaintiffs sufficiently allege facts to support their breach of contract claim

2    against Walker.

3                    iv.    Breach of Fiduciary Duty

4    Plaintiffs allege Walker owed a fiduciary duty and breached such duty in the course of

5    her relationship with Plaintiffs.  (Dkt. No. 84 at 5–6.)

6    In order to establish liability for breach of fiduciary duty, the plaintiff bears the burden of

7    showing (1) defendant breached her fiduciary duty and (2) the breach was a proximate cause of

8    the losses sustained.  *Senn v. Northwest Underwriters, Inc.*, 875 P.2d 637, 639 (Wash. Ct. App.

9    1994).  "A fiduciary relationship arises in fact when there is something in the particular

10   circumstances which approximates a business agency, a professional relationship, or a family tie,

11   something which itself impels or induces the trusting party to relax the care and vigilance which

12   he otherwise should, and ordinarily would, exercise."  *Alexander v. Sanford*, 325 P.3d 341, 363

13   (Wash. Ct. App. 2014) (internal quotation marks omitted).

14   As Plaintiffs' controller, Walker had access to personal and financial information,

15   including that of Plaintiffs and their members and managers.  (Dkt. No. 84 at 5.)  Plaintiffs argue

16   "Walker owed Plaintiffs a fiduciary duty to safeguard the personal and financial information,

17   keep it confidential, and not use it adversely against Plaintiffs."  (*Id.* at 5-6.)  Additionally,

18   Plaintiffs argue Walker "had a duty to properly account for all of the Plaintiffs' revenue and

19   expenses and to convert information, money or property."  (*Id.* at 6.)  Accordingly, Plaintiffs

20   argue, Walker breached this duty by "(1) taking monies belonging to the Plaintiffs without

21   authorization, (2) concealing the fact that she took Plaintiffs monies without authorization, (3)

22   failing to properly account for monies received and paid, (4) failing to timely pay Plaintiffs'

23   vendors and creditors, (5) failing to provide honest and accurate reports to the Plaintiffs, and (6)

24

ORDER PROVISIONALLY GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 84) AGAINST
KARSTAN WALKER PENDING EVIDENTIARY HEARING ON DAMAGES - 11

1    failing to properly maintain the Plaintiffs' books." (*Id.*)  As a result of the breach, Plaintiffs

2    claim Wykanush incurred damages amounting to $259,838.61 and Eden incurred damages to the

3    amount of $32,935.00.  (*Id.*)

4        Accepting Plaintiffs allegations as true, Plaintiffs have established Walker owed a

5    fiduciary duty and breached her fiduciary duties by taking Plaintiffs' monies and making

6    fraudulent reports.  Further, Plaintiffs properly demonstrate they suffered damages due to

7    Walker's breach of fiduciary duty.

8                    v.    Unjust Enrichment

9        Plaintiffs pursue a claim of unjust enrichment against both Walker and Kristopher

10   Walker.  (Dkt. No. 75 at 14–15.)

11       "Unjust enrichment is the method of recovery for the value of the benefit retained absent

12   any contractual relationship because notions of fairness and justice require it." *Young v.* Young,

13   191 P.3d 1258, 1262 (Wash. 2008).  "Three elements must be established in order to sustain a

14   claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiff; an

15   appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the

16   defendant of the benefit under such circumstances as to make it inequitable for the defendant to

17   retain the benefit without the payment of its value." (*Id.*) (internal quotation marks omitted).

18   Unjust enrichment is another way of claiming a quasi-contract exists between the parties.  (*Id.*)

19       Because unjust enrichment contemplates the absence of a contractual relationship, and

20   because the Court is finding in favor of Plaintiffs on their breach of contract claim against

21   Walker, there is no basis to award recovery based on unjust enrichment.  The request for default

22   judgment against Walker based on unjust enrichment against Walker is DENIED.

23

24

1  As for Plaintiffs unjust enrichment claim against Kristopher Walker, Plaintiffs fail to

2  allege facts establishing a quasi-contractual relationship between Plaintiffs and Kristopher

3  Walker.  Therefore, Plaintiffs' request for default judgment against Kristopher Walker based on

4  unjust enrichment is DENIED.

5              3.  _Eitel_ Factor 4: The Sum of Money at Stake

6  The fourth _Eitel_ factor "considers whether the amount of money requested is proportional

7  to the harm caused."  _Sun Life Assurance Co. of Canada v. Est. of Wheeler_, Case No. C19-0364-

8  JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020).  "If the sum of money at issue is

9  reasonably proportionate to the harm caused by the defendant's actions, then default judgment is

10  warranted."  _Walters v. Statewide Concrete Barrier, Inc._, Case No. C-04-2559 JSW MEJ, 2006

11  WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006).  "The Court considers Plaintiff's declarations,

12  calculations, and other documentation of damages in determining if the amount at stake is

13  reasonable."  _Marshall Wealth Mgmt. Grp., Inc. v. Santillo_, Case No. 18-CV-03510-LHK, 2019

14  WL 79036, at *7 (N.D. Cal. Jan. 2, 2019) (quoting _Trung Giang Corp. v. Twinstar Tea Corp._,

15  Case No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)).

16  As discussed below, the Court finds that Plaintiffs have established they have incurred

17  damages, the full extent of which will need to be identified in an evidentiary hearing.

18  Accordingly, the Court finds this factor weighs in favor of a default judgment.

19              4.  _Eitel_ Factor 5 and 6: The Possibility of a Dispute Concerning Material Facts
                   and Excusable Neglect

20

21  Because Walker and Kristopher Walker have never disputed Plaintiffs allegations there is

22  no possibility of dispute concerning material facts.  There also is no indication of excusable

23  neglect on Walker or Kristopher Walker's part as in the past three years they have made no

24

ORDER PROVISIONALLY GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 84) AGAINST
KARSTAN WALKER PENDING EVIDENTIARY HEARING ON DAMAGES - 13

1    efforts to object to Plaintiffs' claims.  Accordingly, the fifth and sixth *Eitel* factors favor default

2    judgment.

3                    5.    <u>*Eitel* Factor 7: The Preference for Resolving Disputes on the Merits</u>

4           The final *Eitel* factor recognizes "the strong policy underlying the Federal Rules of Civil

5    Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1472.  Because Defendants have

6    never appeared in this matter, a resolution of all claims against Defendants on the merits is

7    impossible.  Though the seventh factor may weigh against a default judgment, it is not

8    dispositive.  *See PepsiCo, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal.

9    2002) ("the mere existence of Fed. R .Civ. P. 55(b) indicates that 'this preference [for merits

10    decisions], standing alone, is not dispositive.'").

11    **C.  Calculation of Damages**

12           The court must ensure the amount of damages is reasonable and demonstrated by the

13    evidence.  *See* Fed. R. Civ. P. 55(b); *Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 358412

14    (W.D. Wash. 2014).  In determining damages, a court may rely on the declarations submitted by

15    the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2).  A "plaintiff must 'prove

16    up' the amount of damages, fees, and costs it requests by providing admissible evidence in the

17    form of clear declarations, calculations, witness testimony, or other documentation supporting its

18    request*." Bostik, Inc. v. J.E. Higgins Lumber Co.*, No. 12-4021 SC, 2013 WL 312074, *4 (N.D.

19    Cal. Jan. 10, 2013).

20           The Court is not confident it is able to follow all the calculations and documentary

21    evidence Plaintiffs provide in support of their request for damages.  It is more appropriate for

22    Plaintiffs to walk the Court through the calculation of damages and the supporting documents at

23    a brief evidentiary hearing.

24

ORDER PROVISIONALLY GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 84) AGAINST
KARSTAN WALKER PENDING EVIDENTIARY HEARING ON DAMAGES - 14

1

## IV     CONCLUSION

2          Accordingly, and having considered Plaintiffs' motion, and the remainder of the record,

3    the Court finds and ORDERS that Plaintiffs' motion for default Judgment is provisionally

4    GRANTED as to Defendant Karstan Walker pending an evidentiary hearing as to damages on

5    Plaintiffs claims for conversion, fraudulent representation, breach of contract, and breach of

6    fiduciary duty.

7          Plaintiffs SHALL contact the Court's court room deputy to schedule a brief evidentiary

8    hearing regarding Plaintiffs' damages.

9          The motion for default judgment as to Defendant Kristopher Walker is DENIED.

10

11        Dated this 6th day of January, 2025.

12

13

14                                          David G. Estudillo
                                            United States District Judge
15

16

17

18

19

20

21

22

23

24